

**ORDERED in the Southern District of Florida on November 7, 2012.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

SAGAMORE PARTNERS, LTD.,                    Case No. 11-37867-BKC-AJC
                                            Chapter 11
       Debtor.

_____/

SAGAMORE PARTNERS, LTD.,
a Florida limited partnership,

       Plaintiff,                    Adv. No. 11-3122-BKC-AJC-A

vs.

JPMCC 2006-LDP7 MIAMI BEACH
LODGING, LLC, a Florida limited liability
company, LNR PARTNERS, LLC, a Florida
limited liability company, f/k/a LNR
PARTNERS, INC., a Florida corporation,
ARBOR COMMERCIAL MORTGAGE, LLC,
a New York limited liability company,
NOMURA CREDIT & CAPITAL, INC., a
Delaware corporation, WELLS FARGO BANK,
N.A., as Trustee for the Registered Holders of
J.P. Morgan Chase Commercial Mortgage
Securities Corp., Commercial Pass-Through

1

Certificates, Series 2006-LDP7, a New York
Common Law Trust, U.S. BANK NATIONAL
ASSOCIATION, as successor trustee for the
Registered Holders of J.P. Morgan Chase
Commercial Mortgage Securities Corp.,
Commercial Pass-Through Certificates, Series
2006-LDP7, a New York Common Law Trust,
and        BERKADIA        COMMERCIAL
MORTGAGE, LLC, a Delaware limited
liability company,

               Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR INVOLUNTARY DISMISSAL/DIRECTED VERDICT ON COUNTS I AND II OF THE AMENDED COMPLAINT

THIS CAUSE came before the Court on October 31, 2012, at 10:00 a.m., for trial as to Counts I and II of the Amended Complaint[1] brought by Plaintiff/Debtor Sagamore Partners, Ltd. ("**Sagamore**" or the "**Debtor**").[2]  Count I seeks a Determination of the Validity, Priority and Extent of Liens against JPMCC 2006-LDP7 Miami Beach Lodging, LLC ("**JPMCC**"), LNR Partners, LLC ("**LNR**"), Berkadia Commercial Mortgage, LLC ("**Berkadia**"), Wells Fargo Bank, N.A., as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-LDP7, a New York Common Law Trust ("**Wells Fargo, Trustee**"), and U.S. Bank National Association, as Successor Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Pass-Through Certificates, Series 2006-LDP7, a New York Common Law Trust ("**U.S. Bank, Trustee**"); Count II is an Objection to Claim against JPMCC.

---

[1] The *Amended Complaint to Determine the Validity, Priority, and Extent of Liens; for Temporary Restraining Order and Injunctive Relief; and for Other Relief and Damages* [ECF No. 28] (the "**Amended Complaint**").

[2] The matter was bifurcated for trial pursuant to this Court's order [ECF No. 339], and the remaining counts were to be tried, if necessary, at the conclusion of the trial on Counts I and II. The Court previously entered judgment for Plaintiff and against Defendants, Arbor Commercial Mortgage, LLC, ("**Arbor**"), and Nomura Credit & Capital, Inc., ("**Nomura**"), as to Count I [ECF No. 319].

Defendant, JPMCC, as the party seeking to establish secured creditor status, presented evidence in an effort to prove its ownership of the loan documents at issue upon which it seeks to foreclose.  At the close of Defendant's *prima facie* case,[3] Plaintiff moved for an involuntary dismissal of those claims (the "**Motion**"), in accordance with the relief sought in Counts I and II. The Court deems the Motion as one for directed verdict and grants in part and denies in part the Motion.  The Motion is **GRANTED in part** because the Court finds that Sagamore and its counsel were not provided with a sufficient "notice of default" as required by the operative Loan Agreement (defined below).  The Motion is **DENIED in part** because the Court preliminarily concludes that JPMCC is the owner of the promissory note and mortgage at issue and has a valid, first priority lien (subject to calculation) on Sagamore's Property (defined below).

Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

Debtor is the owner and operator of the Sagamore Hotel on Miami Beach, Florida (the "**Property**").  Arbor and Sagamore entered into a loan transaction (the "**Loan**"), in which Sagamore executed, among other documents, an Amended and Restated Promissory Note dated March 24, 2006 (the "**Note**"), in the principal amount of $31,500,000.00 and a Loan Agreement dated as of even date (the "**Loan Agreement**").  The Note was secured by an Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Financing Agreement, also dated as of March 24, 2006, executed by Sagamore in favor of Arbor (the "**Mortgage**").  At trial, JPMCC presented sufficient evidence of transfers and assignments of the

---

[3] During a hearing on October 29, 2012, the Court determined that JPMCC would have the initial burden of presenting *prima facie* evidence as to the validity, extent, and priority of its lien at trial.

Note and Mortgage from Arbor to JPMCC.  JPMCC further presented evidence that it was the owner and holder of the Note and had the original of the Note.

At trial, Defendants presented the testimony of Edward Christopher Brown ("**Brown**"), Vice President of LNR, the special servicer of the Loan.  In his sworn Declaration under penalty of perjury [ECF No. 366], offered by JPMCC in addition to his sworn testimony from the witness stand, Brown detailed the assignments and transfers of the Note and Mortgage from Arbor to JPMCC.  Brown testified that the Note and Mortgage were conveyed from Arbor to Nomura, which in turn assigned the Note and Mortgage to Wells Fargo, Trustee, which thereafter assigned the Note and Mortgage to U.S. Bank, Trustee. By virtue of a Limited Power of Attorney, dated July 7, 2009, U.S. Bank, Trustee granted LNR the power to act on its behalf concerning the Loan.  Following Sagamore's failure to make the debt service payment due on August 11, 2009, and thereafter, LNR, on September 29, 2009, formed JPMCC as a special purpose entity, wholly owned by U.S. Bank, Trustee.  JPMCC presented evidence that the Note and Mortgage were assigned to JPMCC on November 17, 2009. The Court finds Mr. Brown to be forthcoming and his testimony was credible and believable and was not rebutted by any other evidence produced at trial.

On August 11, 2009, Sagamore failed to make the debt service payment due and, pursuant to the Loan Agreement, the Loan went into default.  Thereafter, LNR sent a Notice of Default (the "**Default Notice**") to Sagamore, dated September 28, 2009, and executed by Mr. Brown. The Default Notice was addressed to Sagamore Partners, Ltd., 1177 Kane Concourse, Bay Harbor, FL 33154 and advised Sagamore, among other things, that "Borrower is in default under the Note and other Loan Documents," and advised Sagamore that if "Lender does not receive all amounts due under the Loan within 10 days of receipt of this letter, Lender will take

all actions as it deems appropriate to protect its interest in the Loan and to collect the debt

thereunder, including, without limitation, seeking foreclosure and/or reconveyance of its security

under the Loan Documents without further notice or demand . . . ." [4]

> Section 10.6 (page 90) of the Loan Agreement provides, in relevant part, that:

>> All notices, consents, approvals and requests required or permitted
>> hereunder or under any other Loan Documents shall be given in
>> writing and shall be effective for all purposes if hand delivered or
>> sent . . .

|  |  |
|---|---|
| If to Borrower: | Sagamore Partners, Ltd.<br>1177 Kane Concourse<br>Bay Harbor Islands, Florida 33154<br>Attn: Martin Taplin<br>Facsimile No. (305) 864-5744 |
| With a copy to: | Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attention: Alan Pleskow, Esq.<br>Facsimile No. (212) 801-6400 |

There was no evidence presented by Defendants that the Default Notice was ever sent to

Greenberg Traurig.  The Default Notice contains no reference to it having been sent to

Greenberg Traurig, and Mr. Brown was not able to testify with any certainty that it had been sent

to Greenberg Traurig.  The Court also notes that the Default Notice was not addressed to Bay

Harbor Islands, but to Bay Harbor.

Sagamore did not cure the default and, on November 19, 2009, a notice of acceleration

was sent to Sagamore, indicating a copy of same was sent to Greenberg Traurig as well.

## CONCLUSIONS OF LAW

Although the Court has not heard Sagamore's evidence, if any, to the contrary, it appears

---

[4] The specifics of the extent of the default and the monetary requirements to cure were not included in the Default Notice; rather, the Default Notice stated that, "[t]he aggregate amount due and payable by Borrower under the Loan Documents will be calculated for you upon request made to the undersigned at LNR Partners, 1601 Washington Avenue, Suite 700, Miami Beach, FL 33139 (Fax 305-695-5601).

to the Court that JPMCC is the owner of and proper party with standing to enforce the Note,[5] that the Mortgage is valid, that JPMCC has a first priority lien, and that the amount of that lien is subject to calculation.   Despite the fact that there were a series of amended and restated promissory notes with various lenders that preceded the Note, the Court rejects Sagamore's arguments that: (i) JPMCC must attach the original version of the various preceding promissory notes to the Note as a prerequisite to enforcing the Note; and (ii) the original versions of the various preceding promissory notes must be marked cancelled, paid, or discharged before the Note can be enforced.  *See Dunhill Asset Services III, LLC v. Tinberg*, 2012 WL 3028334, *2 (N.D. Ill. 2012) (where promissory notes executed in 2007 were a "restatement, replacement and substitute for" promissory notes executed in 2006, the court held that the 2007 notes were the "operative instruments" and the lender's failure to offer or reestablish the 2006 notes was not fatal to its enforcement of the 2007 notes); *Nat'l Loan Investors, L.P. v. Joymar Assocs.*, 767 So. 2d 549, 551 (to maintain a mortgage foreclosure action, a lender is required to either present the original promissory note upon which the lender is suing or give a satisfactory explanation for the lender's failure to do so prior to enforcing the note); *Whiteside v. Sherman*, 122 So. 2d 799, 805 (Fla. 2d DCA 1960) (where the record establishes that the new note being foreclosed superseded the first note, the court did not commit error by granting a partial final decree of foreclosure despite "failure to produce the so-called first note").

The Court further concludes that the Loan went into default by virtue of Sagamore's failure to pay its August 11, 2009 debt service payment.  However, the Court finds that the Default Notice did not comply with the Loan Agreement.  The Court finds that the Loan Agreement provides for written notice of default, and required that notices of default be provided

---

[5] The Court believes this to be the case, but cannot formally make this finding yet because, as a result of this ruling, Plaintiff has not yet had the opportunity to present evidence in opposition.

6

both to the Debtor and to the Debtor's attorneys, Greenberg Traurig, LLP, at its New York offices.

First, there is an error in the address on the Default Notice. It is addressed to Sagamore in "Bay Harbor, Florida" when it should have been addressed to Sagamore in "Bay Harbor Islands, Florida." The Court thinks that if that were the only defect in the Default Notice, that issue could have been overlooked and the Default Notice considered sufficient. But Defendants presented no evidence that the Default Notice was ever sent to Sagamore's attorneys at Greenberg Traurig in New York, and the Default Notice itself contained no reference to Greenberg Traurig as a recipient.

Unlike the error in the address, which on its own could have been overlooked, the defect of failure to provide notice to Greenberg Traurig cannot be overlooked. Notice to Sagamore's attorneys, Greenberg Traurig, was essential and specifically made a term of the contract between the parties. As Mr. Brown testified, the notice of default is very important. In view of the absence of any evidence of sending a copy of the September 28, 2009 Default Notice to Greenberg Traurig, LLP, the Court concludes that while there was a default by the Debtor in light of its failure to make the August 11, 2009 debt service payment, a sufficient "notice of default" has not yet been given pursuant to Section 10.6 of the Loan Agreement.

Moreover, the Court finds that the Loan Documents also require that Sagamore be given ten days from a properly issued notice of default to cure the default. The Court believes that while there are some ambiguities or inconsistencies in the Loan Agreement (with respect to the issue of the requirement of notice), and specifically with respect to Section 10.11 (entitled "Waiver of Notice") and Articles 8 and 10 of the Loan Agreement, such ambiguities are to be resolved in favor of the borrower (Sagamore) and against the lender (JPMCC).

The Court further finds that JPMCC is not precluded at this time from providing the Debtor with a proper "notice of default," with opportunity to cure, and the Court orders relief from stay in that regard.  In the event that notice of default is given to Sagamore and its attorneys, Greenberg Traurig, Sagamore shall have 10 days from the receipt of that notice in which to cure.  The nature and extent of the proceedings to follow thereafter will be determined by the actions of the parties.[6]

In regard to the amount due to JPMCC, the Court is not satisfied with the evidence offered by JPMCC at trial and the amount due is subject to further calculation.  If the parties are unable to agree as to the amount of the outstanding indebtedness by looking at the record and making a mathematical calculation, the Court shall appoint an examiner to study the payments made, if any, and determine the amount due.

In view of the Court's findings of fact and conclusions of law, the Court retains jurisdiction to enter such further orders as may be reasonable and just, including whether to sanction the lawyers who tried this case for needlessly killing forests of trees simply to display a show of force in the form of bankers boxes filled with documents.  Each side brought about 65 boxes to the trial and did not seem to use more than 2 – maybe 3, at most.  Wasteful!  The Court believes the planting of 65 trees for each party may be an appropriate sanction, but it will decline to order the sanction at this time.

IT IS SO ORDERED.

### ###

---

[6] As to the issue of default interest, the Court entered an order on the disclosure statement [ECF No. 213] in the main Chapter 11 proceeding that denied approval of the disclosure statement, and indicated that, as a matter of law, default interest is allowed prior to the filing of a petition.  However, the Court in its conclusion did rule that, if the Debtor can establish in its action against JPMCC (the secured lender) that any default may be excused, or that default interest is not otherwise due in accordance with the underlying agreement, and/or applicable non-bankruptcy law, then the issue of entitlement to default interest is moot.  So, if this loan is cured, it may well be that the default interest rate issue is moot.  However, the Court makes no ruling on this issue in this Order and is merely pointing out the status of the record in this action.

**Submitted by:**
Isaac M. Jaroslawicz, Esquire

**Comments received from:**
Michael Krietzer, Esquire

Final draft by the Court with reference to both the original order submitted and the comments submitted thereon

**Copies Furnished To:**

Isaac M. Jaroslawicz, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

MIAMI 3391574.3 72496/37043